IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )( | |
| Respondent )( | |
| )( | |
| vs. )( | C.R. NO. B-00-108 |
| )( | |
| PEDRO MARTINEZ-JAIMEZ )( | |
| Petitioner )( | |
| (C.A. No. B-01-119) )( | |

## PETITIONER'S BRIEF IN RESPONSE TO RESPONDENT'S RESPONSE AND MOTION TO ORDER HEARING ON MOTION FOR RELIEF UNDER 28 U.S.C. 2255

Petitioner, Pedro Martinez-Jaimez, files this response and motion to order hearing under 28 U.S.C. 2255 in response to the Government's response and motion for hearing, and in support thereof, would respectfully show the Court the following:

I. Jurisdiction

Petitioner was indicted in the United States District Court for the Southern District of Texas on January 4, 200. In the indictment, Petitioner was charged with illegal re-entry in violation of 8 U.S.C. Subsection 13426(a) and (b). Petitioner plead guilty to the indictment without a plea agreement and on July 10, 2000 was sentenced to a seventy month term of imprisonment.

Under Petitioner's version of the facts, his Counsel did not speak Spanish

1

with such fluency that he understood that he was pleading guilty to an offense which subjected him to more than two years imprisonment. After his sentence, Petitioner affirms that he was informed by his counsel that he would be eligible for a twenty-four month sentence when the new guidelines came in and that counsel would file a notice of appeal for him.

Basis of Jurisdiction

Petitioner invokes this Courts Jurisdiction under 28 U.S. C. 2255, in which relief in warranted for errors that occurred at trial or sentencing. Jeffers v. Changeler, 234 F.3d 277, 279 (5th Cir. 2000).

Petitioner's claims that because his counsel did not file a notice of appeal, that such failure violates his right to effective counsel. 2. Petitioner complains that his counsel did not properly explain to him how he would be subject to anything even close to the sentence he received, and as such his plea was no voluntary and intelligently made. 3. Because his counsel did not understand Spanish and did not speak with a fluency which allowed Petitioner to understand fully what he was doing, Petitioner merely followed his Counsel's prompting to merely keep saying yes. 4. Petitioner's sentence was illegal because it is based on discrimination based on alienage as described in 8 U.S.C. 1326 (a) and (b), and because of that discrimination, violates the 8th Amendment cruel and unusual punishment

2

prohibition.

## II. Ineffective Assistance of Counsel

Petitioner avers that (1) his counsel's representation was deficient, and (2) the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 691-692, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984). Petitioner avers that his counsel had talked to him about filing a document which would allow him to qualify for a twenty-four month sentence. Petitioner avers that he understood that this document would be some sort of appeal document, although he is not certain what type of document. Petitioner avers that he waited and waited for a document to be given to him which would allow him to qualify for the twenty-four month sentence, and that to this date, none has been provided him. As such, Petitioner avers that his counsel failed to protect his interests by not filing such document which he now understands should have been a notice of appeal. As such, any defenses he had in appealing the case, unless this Court grants him the right to appeal, have been lost.

## III. Involuntary Plea

Following the same rationale under Strickland, above, Petitioner avers that he involuntarily pled guilty because he understood that he would receive, not now, but later on, a twenty-four month sentence. Petitioner avers that, in truth, he never

3

understood the Spanish his trial counsel spoke because it was not clear and was not to the point as to what he was truly facing. Rather, because of this language difficulty, Petitioner believed he would eventually qualify for a twenty-four month sentence, and for that reason pled guilty. Had Petitioner understood that he would never qualify for a twenty-four month sentence, Petitioner avers that he would have never pled guilty. As such, Petitioner's plea is involuntary. Such misunderstanding, Petitioner avers, is due to his trial counsel's inability to explain such complicated matters in Spanish. But for this failure to explain such matters, Petitioner would not have pled guilty but would have forced the Government to prove its case against him by proving that he illegally entered the United States. As such, Petitioner avers his plea was not voluntarily nor intelligently entered into by him.

## IV. Equal Protection Violation Under the Law

Petitioner argues that it violates his right to equal protection to enhance the sentences of re-entering aliens with felony convictions that were not the basis for the deportation, because such an enhancement makes an irrational distinction between aliens with prior felony convictions and citizens with prior felony convictions. Because criminal history adjustments already take the defendant's prior criminal history into account, Petitioner contends, § 2L1.2(b)(1) punishes re-entering aliens twice for their prior criminal history. Defendants who are American citizens, by

4

contrast, have their sentences enhanced only once on the basis of their prior criminal history. While the Sentencing Commission may have concluded that an alien who has been convicted of a felony should be strongly deterred from re-entering the United States, a consideration not present with respect to an American citizen, (See 8 U.S.C. § 1326(b), this policy alone does not justify distinguishing between aliens with prior convictions and citizens with prior convictions. Petitioner believes that the guidelines pursue this policy irrationally. <u>Mathews v. Diaz</u>, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976) (aliens are "persons" under Due Process Clause of Fifth Amendment, so that federal government may not discriminate against them without a rational basis). Petitioner argues that to sustain an equal protection challenge, the Government must prove that this policy is deterring aliens from re-entering the United States. Petitioner asks for hearing on the same, at which time the Government should be ordered to provide proof of such deterrence.

### V. Cruel and Unusual Punishment

Petitioner avers that it is cruel and unusual punishment to deprive him of his liberty under 1326(a) and (b)in the absence of the requisite criteria to support the contention that such severe punishment, ten times that for a non-felony returnee

should result in a commitment under the guidelines of such length.[1] <u>Robinson v California</u> (1962) 370 US 660, 8 L Ed 2d 758, 82 S Ct 1417, reh den 371 US 905, 9 L Ed 2d 166, 83 S Ct 202. The sentence of seventy months in this case is excessive ipso facto and calls to mind Eighth Amendment prohibition against cruel and unusual punishment. <u>Diaz v Le Fevre</u>, 688 F Supp 945 (1988, SD NY).

It is not cruel and unusual punishment to impose the maximum sentence of two years' imprisonment for illegal re-entry after deportation, especially when the accused has previously been convicted of the same crime. <u>United States v Vega-Mejia</u>, 611 F2d 751 (1979, CA9 Or). Imposition of the maximum sentence is not objectionable as a failure of the court to exercise its discretion, so long as the maximum sentence is reserved for cases of repeat offenders and is not imposed in every conviction for illegal re-entry. <u>United States v Davin</u>, 189 F 244 (1911, DC Wash). However, it has also bee found that an alien who is convicted of both illegal entry and illegal re-entry after deportation, stemming from a single entry into the United States, must not be punished with consecutive 2-year sentences. <u>United States v Ortiz-Martinez</u>, 557 F2d 214 (1977, CA9 Cal). Petitioner argues that the

---

[1] Alien subject to detention pending deportation hearing may raise Eighth Amendment prohibition against cruel and unusual punishment only if alien is in custody after being convicted of crime. <u>Equan v United States Immigration & Naturalization Service</u> 844 F2d 276 (1988, CA5).

same rationale applies here, that to so severely punish is cruel an unusual punishment because it is tantamount to stacking sentences as described above, violative of the Eight Amendment prohibitions.

Moreover, such a severe sentence as results from the minimum sentence possible under the sentencing guidelines is excessive per se. The Supreme Court's decision in Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), reaffirms the proposition earlier established in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) that a sentence is "excessive" and unconstitutional under the Eighth Amendment when it is "grossly out of proportion to the severity of the crime." 433 U.S. at 592, 97 S.Ct. at 2865. One Court has characterized the inquiry as "whether the penalty is 'so out of proportion to the crime committed that it shocks a balanced sense of justice." United States v. Holman, 436 F.2d 863, 866 (9th Cir.), cert. denied, 402 U.S. 913, 91 S.Ct. 1394, 28 L.Ed.2d 655 (1971), citing Gallego v. United States, 276 F.2d 914, 918 (9th Cir. 1960). However, proportionality is not the only basis for a cruel and unusual punishment analysis.

Implicit in the Coker analysis is the Gregg rationale. "The death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes by prospective offenders." Gregg v. Georgia, 428 U.S. 153, 183, 96 S.Ct.

7

2909, 2929-30, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.). In Gregg, the Supreme Court concluded that as "an expression of society's moral outrage at particularly offensive conduct," retribution was not "inconsistent with our respect for the dignity of men."[2] Underpinning that "expression of moral outrage" are evolving standards of decency. While this is not a death penalty case, the rationale should hold here in that a rationale for such severe punishment is not an expression of society's moral outrage at particularly offensive conduct.

The Supreme Court has noted that "the authors of the Eighth Amendment drafted a categorical prohibition against the infliction of cruel and unusual punishments, but they made no attempt to define the contours of that category. They delegated that task to future generations of judges who have been guided by the "evolving standards of decency that mark the progress of a maturing society." Thompson v. Oklahoma, 487 U.S. 815, 825, 108 S.Ct. 2687, 2692 (1988), referring to Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)

---

[2]The Supreme Court invalidated death sentences when this significant justification was absent. See Enmund v. Florida, 458 U.S., at 801, 102 S.Ct., at 3378 (death penalty for one who neither kills nor intends to kill "does not measurably contribute to the retributive end of ensuring that the criminal gets his just deserts"); Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (unconstitutional to execute someone when he is insane, in large part because retributive value is so low).

(plurality opinion) (Warren, C.J.). As such, in Thompson, the Supreme court declared that contemporary standards of decency confirm our judgment that such a young person is not capable of acting with the degree of culpability that can justify the ultimate penalty." Id., Thompson, 487 U.S. 815, at 822. Contemporary standards of decency are determined by the state of the law at a particular moment, as is found in cataloging state and international law about whether a particular form of punishment might be considered cruel and unusual and violative of the Eight Amendment ban[3]

It is generally agreed "that punishment should be directly related to the personal culpability of the criminal defendant." California v. Brown, 479 U.S. 538,

---

[3]The Court also noted, that "[m]ost relevant ... is the fact that all States have enacted legislation designating the maximum age for juvenile court jurisdiction at no less than 16. All of this legislation is consistent[487 U.S. 825] with the experience of mankind, as well as the long history of our law, that the normal 15-year-old is not prepared to assume the full responsibilities of an adult." Id, Thompson, 415, at 825-26. Additionally, one may look to international law and to the opinions of leading jurists to determine "changing standards of decency in a civilized society. "The conclusion that it would offend civilized standards of decency to execute a person who was less than 16 years old at the time of his or her offense is consistent with the views that have been expressed by respected professional organizations, by other nations that share our Anglo-American heritage, and by the leading members of the Western European community. Thus, the American Bar Association and the American Law Institute have formally expressed their opposition to the death penalty for juveniles. Although the death penalty has not been entirely abolished in the United Kingdom or New Zealand (it has been abolished in Australia, except in the State of New South Wales, where it is available for treason and piracy), in neither of those countries may a juvenile be executed. The death penalty has been abolished in West Germany, France, Portugal, The Netherlands, and all of the Scandinavian countries, and is available only for exceptional crimes such as treason in Canada, Italy, Spain, and Switzerland. Juvenile executions are also prohibited in the Soviet Union." Id., Thompson, 487 US. 815, at 830-31.

545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'CONNOR, J., concurring). The court in Thompson was "persuaded that the imposition of the death penalty for offenses committed by persons under 16 years of age has made, or can be expected to make, any measurable contribution to the goals that capital punishment is intended to achieve. It is, therefore, "nothing more than the purposeless and needless imposition of pain and suffering," Id, Thompson, 487 U.S. 815, 838, referring to <u>Coker v. Georgia</u>, 433 U.S., at 592, 97 S.Ct., at 2866, and thus an unconstitutional punishment. In this cause, Petitioner ask the Government to prove how the punishment here is related to his culpability, and why, if deterrence is not supported by Governmental data, it is not "nothing more than a purposeless and needless imposition of pain and suffering."

Respectfully Submitted

_____
Philip T. Cowen
Law Office of Philip Cowen
500 E. Levee St.,
Brownsville, Texas 78520
Tel. 956-541-1691
Fax 956-5441-6872
State Bar No. 24001933
Fed. I.D. 21717

## Certificate of Service

This is to certify that on November 6, 2001, a true copy of <u>PETITIONER'S BRIEF IN RESPONSE TO RESPONDENT'S RESPONSE AND MOTION TO ORDER HEARING ON MOTION FOR RELIEF UNDER 28 U.S.C. 2255</u> was served on the United States Attorney's office by hand delivery to:

Assistant United States Attorney
Hon. Mark Michael Down
U.S. Attorney's Office
600 E. Harrison St.
Suite 201
Brownsville, Texas 78520
Tel. 956-548-2554

By _____
Philip T. Cowen

11

ClibPDF - www.fastio.com