United States District Court
Southern District of Texas
FILED

NOV 2 0 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent, | § | |
| | § | |
| vs. | § | C.A. NO. B-01-119 |
| | § | |
| PEDRO MARTINEZ-JAIMEZ, | § | |
| Petitioner. | § | |
| ( C.R. NO. B-00-108) | § | |

GOVERNMENT'S RESPONSE AND MOTION TO DISMISS LATE-FILED
CLAIMS UNDER 28 U.S.C. §2255

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, "the government" files this response and motion to dismiss late-filed claims under 28 U.S.C. §2255 filed by Pedro Martinez-Jaimez (hereinafter referred to as "Martinez"), and in support thereof would respectfully show the court the following:

I.

JURISDICTION

A.   Procedural history.

Martinez was indicted in the United States District Court for the Southern District of Texas on January 4, 2000.  In the indictment, Martinez was charged with illegal re-entry in violation of 8 U.S.C. §§1326(a), and (b) (DOC 1)[1].  On April 13,

---

[1]The first number in the DOCument cite relates to the number given the document in the criminal docket sheet. The second number within the DOC cite relates to the page number of the document. PSR is the presentence investigation report. PSR.Add. Refers to the addendum to the PSR.

2000, Martinez plead guilty to the indictment without a plea agreement (DOC. 11; PSR 3). On July 10, 2000, Martinez was sentenced to a seventy-month term of imprisonment to be followed by a three-year term of supervised release (DOC 19). The judgment was entered on July 25, 2000 (DOC 19).

No appeal has been filed on behalf of Martinez.

Martinez timely filed his motion for relief under 28 U.S.C. §2255, Civil Action No. B-00-119, on July 2, 2001 (DOC 1). On September 10, 2001, the government filed its response. On October 1, 2001, Martinez filed a "Traverse to the Government's Response". Finally, on November 6, 2001, in association with new counsel, Martinez filed an additional "response" to the government's response.

B.    Basis of jurisdiction.

Martinez invoked this Court's jurisdiction under 28 U.S.C. §2255. A §2255 motion "provides the primary means of collaterally attacking a federal conviction and sentence." *Jeffers v. Chandler*, 234 F.3d 277, 279 (5th Cir. 2000) (citation omitted). Relief under a §2255 motion "is warranted for errors that occurred at trial or sentencing." *Id.* In his petition, Martinez alleges four grounds of error: 1) he complains that his right to appeal be restored on the grounds his trial counsel rendered constitutionally infirm assistance by failing to file notice of appeal as directed (Petition); 2) he complains his trial counsel rendered constitutionally infirm assistance by failing to perform pretrial investigation and to provide meaningful advice; 3) his plea of guilty was unknowing and involuntary; and 4) the

2

sixteen-level enhancement represents class-based discrimination.

This Court is properly vested with jurisdiction under 28 U.S.C. §2255 for the above allegations.

In his "traverse", filed fourteen (14) months after his judgement became final and two months after the limitations period expired, Martinez seeks to raise additional claims. Under the issue of ineffective assistance, Martinez added: 1) failed to determine culpability as to all elements; 2) failed to object to erroneous and prejudicial statements and calculations in the PSR; and 3) failed to consult as to grounds for appeal. Martinez urged two additional substantive claims: 1) the indictment was insufficient as failing to allege a *mens rea*; and 2) an *Apprendi* challenge.

In his latest response, Martinez added an additional claim, that is: cruel and unusual punishment.

Martinez' "traverse" and "response" are untimely to raise additional claims. On April 24, 1996, a one-year period of limitation was placed upon the filing of claims under §2255. The one-year period runs from the date the judgment of conviction becomes final. Martinez' ability to file such motion expired on August 4, 2001 (one year plus the ten[10] days after his judgment was entered, with the expiration of the period for filing notice of appeal).

FED. R. CIV. PROC. 15(a), permits parties to amend their pleadings after a responsive pleading has been filed "only by leave of court or by written consent of

3

the adverse party". *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998). Martinez has neither sought nor obtained either leave of court or written consent of the government. Even if he had, the late-filed claims may not be heard.

Although ordinarily, under FED. R. CIV. PROC. 15(a), amendments of habeas claims may be "freely given when justice so requires". A different situation arises when the amendments are filed after the AEDPA's statute of limitations has run. *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-504 (10th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3rd Cir. 1999). Permitting claims to be filed following the expiration of the statute of limitations would "frustrate the intent of Congress" and amount to "judicial rescission" of the limitations period. *Id.* Although "clarification" of timely filed claims may be permitted to be filed by the court following the running of the limitations period, new issues do not enjoy "relation back" treatment. *Id., United States v. Lampton*, 2001 WL 263094 (E.D. La. Mar 14, 2001)(NO. CR. A. 96-125)(discussion regarding "relation back").

The Court is without jurisdiction to entertain Martinez' late filed claims.

II.

### FACTS UNDERLYING
### THE CONVICTION AND SENTENCE

A.    Sentencing: November 3, 1999.

The facts of the crime are not relevant to this proceeding.

On June 10, 2000, Martinez' sentencing hearing was held. The district court sentenced Martinez to seventy (70) months imprisonment to be followed by a

4

three- year term of supervised release (Sentencing Transcript, p. 8). Following the assessment of punishment, the district court admonished Martinez of his right to appeal and of the ten–day deadline for the filing notice of appeal (Sentencing Transcript, p. 9).

III.

### CAUSE AND PREJUDICE

To obtain post–conviction relief in a collateral attack, a defendant must show either: (1) cause excusing his procedural default and actual prejudice resulting from the alleged error, *see United States v. Frady*, 456 U.S. 152, 167–168, 102 S.Ct. 1584, 1594 (1982), or (2) that he is actually innocent. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc). A showing of cause requires a showing of some external impediment that prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472 (1991). Even though the law may have been settled against him on an issue, "the futility of raising an objection ... cannot alone constitute cause for a failure to object at trial." *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573 (1982).

"'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'" *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 1611–1612 (1998); *United States v. Torres*, 163 F.3d 909, 911 n.9 (5th Cir. 1999). To prove actual innocence, the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no fact finder would have convicted

him." *Id.* (citations and quotations omitted).   Martinez makes no such claims.
The cause–and–prejudice standard is met by allegation and proof of ineffective
assistance of counsel in certain circumstances. *United States v. Gaudet*, 81 F.3d
585, 589 (5th Cir. 1996). Here, as in *Smith*, Martinez claims he directed his trial
counsel to file notice of appeal. *United States v. Smith*, 241 F.3d 546, 2001 WL
111590 *2 (7th Cir. [Ill.], Feb 08, 2001).  If this were true, it would satisfy the
"cause and prejudice" components excusing him from failing to raise this issue on
direct appeal.

Failing demonstration that he directed his attorney to file notice of appeal,
to show prejudice, Martinez must meet a higher standard higher even than plain
error. *Smith*, 241 F.3d at 547, 2001 WL 111590 *1.  He must show "not merely
that the errors at his trial created a *possibility* of prejudice, but that they worked
to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170, 102 S.Ct. at
1596 (emphasis in original).   Here, Martinez cannot meet that burden.   As
discussed below, his claims are without factual proof or legal basis.   He can
demonstrate no prejudice.

IV.

A. LEGAL PRINCIPLES GOVERNING INEFFECTIVE ASSISTANCE.

Ineffective assistance of counsel claims are generally reviewed under the
now well–established *Strickland* standard:    "Whether counsel's conduct so
undermined the proper functioning of the adversarial process that the trial court

6

cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1034 (2000). To succeed on such a claim, a petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples*, 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted).

### 1. At the plea stage.

"Effective assistance" requires Counsel to provide meaningful advice on the facts and law applicable to a plea agreement. *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. French*, 719 F.2d 387, 389 (11th Cir. 1983). "While it need not be errorless, counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendants". *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993). In the context of a guilty plea, Martinez must demonstrate that, but for counsel's errors, he would not have plead guilty and would have gone to trial. *Id.* citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 369 (1985).

7

## 2. Sentencing errors

In the context of sentencing errors, the petitioner must show that he was prejudiced by counsel's ineffective assistance.  The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable.  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843–844 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

To prevail on his claims, Martinez must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate that but for counsel's unprofessional errors the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  A reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial.  To this end, the court will indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.*

The burden falls on the accused to prove a violation of constitutional standards.  The focus is on the attorney's impact on the adversarial process; the constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*,  466 U.S. 648, 104 S.Ct. 2039 (1984).

8

Even if Martinez demonstrates that his counsel provided constitutionally infirm representation, Martinez must also demonstrate prejudice. Although Martinez need not demonstrate that, absent the error, his sentence would have been "significantly less harsh", he must demonstrate prejudice. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance". *Glover v. U.S.* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001).

B. <u>LEGAL PRINCIPLES GOVERNING INVOLUNTARY PLEA</u>

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220, (U.S. Jun 04, 2001). The terms "voluntary" and "knowing" are frequently used interchangeably, although, strictly speaking, the terms embody different concepts. Compare 1A Charles Alan Wright, FEDERAL PRACTICE and PROCEDURE §172, 142–44 (3rd ed.1999)(stating a plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature), with *Id.* §171–73(stating that a plea is not knowing unless, among other things, defendant understands "what the maximum possible penalty is, including any potential fine and the effect of any special parole or supervised release term"). *United States v. Hernandez*, 234 F.3d 252, 254–255 (5th Cir. 2000). To be knowing and intelligent, the defendant must have "a full

understanding of what the plea connotes and of its consequence." See *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The defendant need only understand the direct consequences of the plea; he need not be made aware every consequence that, absent a plea of guilty, would not otherwise occur. See *Trujillo v. United States*, 377 F.2d 266 (5th Cir. 1967).

C.  New Allegations.

1.  Ineffective assistance by failure to determine culpability to all elements.

During the plea proceedings, the United States Magistrate Judge found that Martinez fully understood the essential elements of the charges against him and his constitutional and statutory rights that his plea was made freely and voluntarily (DOC. 13). The record, thus, demonstrates that Martinez entered his plea voluntarily and that his contention that his plea was not voluntary does not entitle him to §2255 relief. *United States v. Drummond*, 910 F.2d 284, 285-286 (5th Cir. 1990)(although no 'direct' evidence on point, record contained 'conclusive' evidence that plea was voluntary obviating need for hearing), See *Diggs v. United States*, 447 F.2d 460 (5th Cir. 1971).

2.     Ineffective assistance by failing to object to the PSR.

Martinez does not hint to what statements in the PSR or objection thereto he's referring. No matter what offending statement, the only upward adjustment of Martinez' Guideline score was the result of his convictions for two separate

10

aggravated felonies.  He does not allege that he was not eligible for such upward adjustment.

Interestingly, Martinez alleges that counsel failed to consult as to grounds for appeal.  Although this would probably have to be flushed out at an evidentiary hearing, it seems to contradict Martinez' earlier claim that he directed counsel to appeal.  Such earlier claim suggests a discussion as to grounds for appeal, which he now claims did not occur.

     3.    <u>Indictment was insufficient as failing to allege a mens rea</u>.

Martinez contends that the indictment is fundamentally defective because it fails to allege any general intent.  This Court has recently held that 8 U.S.C. §1326 is a general intent crime.  *United States v. Armando Guzman-Ocampo*, 236 F.3d 233, 237 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2600 (U.S. Jun 29, 2001). "[T]he government must show that the defendant had the general intent to re-enter".  *Id*.  This Court, in *Guzman-Ocampo*, found the indictment sufficiently alleged the 'general intent' or 'voluntary act'  scienter of the crime, in that it alleged that the defendant had been "excluded, deported and removed and that he was present without having obtained the consent of the Attorney General".  *Id.*, *United States v. Berrios-Centeno*, 250 F.3d 294, 299 n.6 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 288 (U.S. Oct 1, 2001).

The indictment in this case tracked the statutory language:

> On or about February 14, 2000, in the Southern District of Texas, and within the jurisdiction of the Court, Pedro

11

> Martinez–Jaimez, an alien who had previously been
> denied admission, excluded, deported, and removed,
> knowingly and unlawfully was present in the United
> States having been found in Willacy County, Texas, the
> said defendant having not obtained the consent from the
> Attorney General of the United States for re-application
> by the Defendant for admission into the United States
> [Violation: Title 8, United States Code, Sections 1326(a)
> & (b).] (1 R. 1).

As in *Guzman–Ocampo*, the instant indictment fairly "imports" to Martinez that his

re-entry into the United States was voluntary, thereby providing sufficient notice.

This Court's ruling in *Guzman–Ocampo* is in keeping with this Circuit's

precedent. In *United States v. Wong Kim Bo*, 466 F.2d 1298, 1304 (5th Cir. 1972),

this Court was satisfied that knowledge by the alien of having been deported prior

to re-entry was sufficient to impose criminal sanctions and observed "[t]he arrest

of an alien after an order of deportation has become final provides great assurance

that the alien understands he is being officially deported." *Wong Kim Bo*, 466 F.2d

at 1304. This Court defined the term "arrest" for purposes of the statute as service

of a Warrant of Deportation which, it noted, is accompanied by INS Form I-294

which informs the alien of criminal penalties for reentry. *Id.* 1304-1305 and n.17.

At least one court has read *Wong Kim Bo* as standing for the proposition that the

allegation of an arrest, as set forth in §1326, "put the defendant on notice of the

criminal intent the government would have to prove." *United States v. Cabrera-*

*Teran*, 168 F.3d 141, 147 (5th Cir. 1999) (citing *United States v. Davis*, 92 F.3d

1183 [4[th] Cir. 1996]).

12

Under the current version of §1326, the term arrest is not used. In 1996, Congress modified §1326(a)(1) by substituting the words "denied admission, excluded, deported, or removed" for "arrested and deported, has been excluded and deported". *Cabrera–Teran*, 168 F.3d at 143 n.6 (citing Pub.L. 104–208, §308[d][4][J][i]). By alleging that Martinez was an alien who had been previously deported and removed, the United States effectively alleged that at least one of the deportation or removal proceedings in effect at the time took place. Those procedures are currently set forth in 8 U.S.C.§§1225, 1228 or 1229a; and, prior to April 1, 1997, were set forth in 8 U.S.C. §§1226, 1252, 1252a, and 1252b. In view of the procedural safeguards contained in those provisions, such an allegation ensures that a defendant will not be convicted for re–entry without knowledge of his past official deportation and therefore sufficiently alleges a *mens rea* satisfying 'general intent' under the law of this circuit. *Guzman–Ocampo*, 236 F.3d at 237.

Additionally, the instant indictment precludes conviction for an involuntary entry into the United States. Even if a conviction for an involuntary entry were possible under the indictment, if truly involuntary conduct were raised by the evidence, it may be defended as an affirmative defense to prosecution. *See United States v. Webb*, 747 F.2d 278 (5th Cir. 1984) (statutory requirement of voluntary conduct need not be charged in the indictment or required in jury instruction; rather, lack of voluntariness is in the nature of a defense); *see also United States*

13

*v. Panter*, 688 F.2d 268, 271 (5th Cir. 1982) (Congress's failure to provide specifically for a common-law defense in drafting a criminal statute does not necessarily preclude a defendant from relying on such defense) (citing *United States v. Bailey*, 444 U.S. 394, 415 and n.11, 100 S.Ct. 624, 637 and n.11 [1980]); *see also United States v. Deleveaux*, 205 F.3d 1292, 1296-1297 (11th Cir. 2000), *cert. denied*, 530 U.S. 1264, 120 S.Ct. 2724 (U.S. Jun 26, 2000)(although §922[g][1] is a "strict liability offense," defense of justification available in extraordinary circumstances); *United States v. Newton*, 677 F.2d 16, 17 (2nd Cir. 1982) (defendant raised affirmative defense of coercion or duress in prosecution under §1326); *Pena-Cabanilla v. United States*, 394 F.2d 785, 788 n.2 (9th Cir. 1968) ("Even in a crime requiring no specific intent, a defendant may <u>defend</u> upon the ground that he did no voluntary act; that he was asleep or unconscious at the time an act occurred.") (emphasis added).

By placing the burden on the defendant to raise the defense, the court would further Congress's intent to prosecute those aliens whose re-entry is not discovered at the border and whose manner of re-entry may never be discovered because of its surreptitious nature. *See United States v. Asibor*, 109 F.3d 1023, 1031 (5th Cir. 1997) (date of alien's surreptitious re-entry irrelevant, the purpose of the "found in" provision of §1326 is to provide punishment for an alien who, having re-entered, remains illegally in this country until his presence is discovered). To place the burden on the defendant to prove involuntariness where

14

re-entry by the alien is surreptitious would avoid the anomalous result reached by the Court of Appeals for the Ninth Circuit in *Quintana-Torres*, which held the government's burden of proving a voluntary entry was met by proof of discovery of the alien away from the border and that to "dispel" the inference of voluntariness from such facts, the alien would have to demonstrate that one of the speculative possibilities of involuntary entry had actually taken place. *United States v. Quintana-Torres*, 224 F.3d 1157, 1158-1159 (9th Cir. 2000) .

Even conceding §1326 charges a general intent crime, for the reasons set above, the indictment was not deficient. Martinez did not challenge the sufficiency of the indictment to charge sufficient scienter in the district court. As a result, this Court will construe it liberally. *Guzman-Ocampo*, 236 F.3d at 238; *United States v. Threadgill*, 172 F.3d 357, 373 (5th Cir. 1999).  "When the sufficiency of an indictment is first challenged at the appellate level, the language is liberally construed and reversible error will not be found unless the wording cannot by reasonable construction charge a crime." *United States v. Barksdale-Contreras*, 972 F.2d 111, 113 (5th Cir. 1992).

In *Wilson*, this Court upheld an indictment that charged an offense under 21 U.S.C. §924(c)(1), even though no *mens rea* was contained in either the indictment or the statute.  *United States v. Wilson*, 884 F.2d 174, 177 (5th Cir. 1989). Following *United States v. Purvis*, 580 F.2d 853, 857-858 (5th Cir. 1978) and *United States v. Arteaga-Limones*, 529 F.2d 1183, 1199-1200 (5th Cir. 1976), this

15

Court found the indictment sufficient because the *mens rea* requirement could be

fairly imported from the facts alleged:

> The present case is controlled by *Purvis* and *Arteaga-
> Limones*. The indictment here referred to both the
> predicate and substantive statutes. The scienter
> requirements for both statutes, while not present in the
> statutes, were relatively clear. The *mens rea* for both
> §924(c)(1) and the possession element of §841(a)(1) was
> the lowest possible mental state short of strict liability –
> knowledge of the facts constituting the offense – and the
> indictment, liberally read, "fairly imports" this marginal
> mental state. Therefore, we conclude that the indictment
> sets out the essential elements of the predicate and
> substantive offense.

*Wilson*, 884 F.2d at 180–181. Similarly, the indictment in this case fairly imports

that Martinez' re-entry was a voluntary act in view of the allegations that he had

been previously deported and removed from the United States and that he was

present in the United States without having obtained the consent of the Attorney

General. *Quintana-Torres*, 224 F.3d at 1158–59 (jury could reasonably infer intent

to be here from presence at any location in the country other than the border); *see*

*also United States v. Perez-Landaverde*, 65 F.Supp.2d 567, 572 (S.D.Tex. 1999)

(general intent requirement in §1326, which is analogous to voluntary action by

defendant, is satisfied by allegation in indictment defendant was found in United

States after being properly deported).

    4.   *Apprendi* challenge.

    *Apprendi* claims are not cognizable on collateral review herein. *Apprendi*

has not been held retroactive to cases on collateral review by any circuits. *Ashley*

16

*v. United States*, 266 F.3d 671 (7th Cir. 2001). Although the Supreme Court has not ruled upon whether *Apprendi* is to be applied retroactively to cases on collateral review, several circuits have ruled in the negative. *United States v. Murphy*, 268 F.3d 599 (8th Cir. 2001); *Forbes v. United States,* 262 F.3d 143 (2nd Cir. 2001); *United States v. Moss*, 252 F.3d 993 (8th Cir. 2001); *United States v. Sanders*, 247 F.3d 139, 146-151 (4th Cir. 2001), *cert. denied*, --- S.Ct. ---, 2001 WL 1244813 (U.S. Nov 13, 2001); *Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000). A decision within the district has also ruled in the negative. *Gonzalez v. United States*, 159 F.Supp.2d 555, 562 (S.D. Tex., 2001).

Even if *Apprendi* claims were deemed cognizable herein, it would not avail Martinez' relief. Martinez argues that the "aggravated felony" provision of 8 U.S.C. §1326(b)(2) is an essential element of the offense, rather than a sentencing enhancement factor, and that it must be pled in the indictment. This argument was expressly rejected by the Supreme Court in *Almendarez-Torres v. United States,* 523 U.S. 224, 226-27, 118 S.Ct. 1219 (1998). Ignoring this fact, Martinez argues that the Supreme Court's recent opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), authorizes this Court to revisit this issue and reverse his conviction. This argument was recently and explicitly rejected in *United States v. Chapa-Garza*, 243 F.3d 921, 924 (5th Cir. 2001); *United States v. Nava-Perez*, 242 F.3d 277, 279 (5th Cir. 2001), cert. denied, 121 S.Ct. 2537 (U.S. Jun 18, 2001); *United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000), *cert.*

*denied,* 121 S.Ct. 1214 (U.S. Feb 26, 2001). This Court must follow *Almendarez-Torres* unless, and until, the Supreme Court itself determines to overrule it.

Even if the Supreme Court were to overrule *Almendarez-Torres,* Martinez would be entitled to no relief. The indictment in this instance specifically directed him to 8 U.S.C. §1326(b)(2). Unlike in *Cabrera-Teran*, wherein this Court found a statutory citation to §1326(a) insufficient to put a defendant on notice as to the "arrest" element – which was one of several elements illuminated in that version of the statute, §1326(b)(2) is a *narrowly* drawn sentencing provision. Cabrera-Teran, 168 F.3d at 143. It contains *only* the enhancement element:

> (b)     Criminal penalties for reentry of certain removed aliens. Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection –
>
> > (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years or both.

By citing to §1326(b)(2), Martinez was directed to this particular and *singular* element, and this was sufficient to give him actual notice that the United States was charging a sentence enhancement. To hold otherwise essentially elevates form over substance, and it relegates the Grand Jury's direction to §1326(b)(2) to a meaningless act. The United States posits that this case falls under the rubric of *United States v. Varkonyi,* 645 F.2d 453 (5th Cir.1981), an earlier case in which this Court found the indictment sufficient notwithstanding failure to allege all elements of offense charged where the statutory reference directed the defendant

18

to specific statute setting out the list of particular federal officers protected by the statute.

    5.    <u>Cruel and unusual punishment</u>.

Martinez alleges that his seventy-month sentence for illegal reentry is "ipso facto" unconstitutionally excessive. However, a sentence within the limits set by statute may not be overturned on appeal unless the sentence is "so grossly out of proportion to the severity of the crime as to shock our sense of justice". *United States v. Cupa-Guillen*, 34 F.3d 860, 864 (9th Cir. 1994)(one hundred month sentence for §1326 violation not excessive).

VI.

CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Government respectfully prays that Martinez' late-filed claims under §2255 be dismissed.

                  Respectfully submitted,

                  GREGORY A. SERRES
                  United States Attorney

By:   _____
                  Mark M. Dowd
                  Assistant United States Attorney
                  TX Bar No. 06070500
                  SD Tex ID No.  9314
                  600 E. Harrison, # 201
                  Brownsville, TX 78520
                  (9563) 548-2554

19

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, do hereby certify that a copy of the foregoing Government's Response and Motion to Dismiss Late-Filed Claims Under §2255 has been mailed on this the _20th_ day of _NOVEMBER_____, 2001 via certified mail, return receipt requested to:

Mr. Perdro Martinez-Jaimez
Reg. No. 33911-080
FCI Forrest City
Forrest City, Texas, 72336-9000

Mark M. Dowd
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Respondent, | §<br>§<br>§ | |
| vs. | §<br>§ | C.A. NO. B-01-119 |
| PEDRO MARTINEZ–JAIMEZ,<br>Petitioner.<br>( C.R. NO. B-00-108) | §<br>§<br>§ | |

## O R D E R

It is hereby ORDERED that Petitioner's late filed claims under §2255 are

hereby DISMISSED as untimely.

SIGNED on this the _____ day of _____ 2001 in Brownsville,

Texas.

_____
UNITED STATES DISTRICT JUDGE